Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN MCCORMICK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NAMASTE TECHNOLOGIES INC., SEAN DOLLINGER, PHILIP VAN DEN BERG and KENNETH NGO,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kevin Mccormick ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Namaste Technologies Inc. ("Namaste" or the "Company"), and information readily

obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Namaste securities between November 29, 2017 and October 4, 2018, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Namaste securities during the Class Period and was economically damaged thereby.

7. Defendant Namaste operates as a cannabis e-commerce company with e-commerce sites in 26 countries. Namaste is incorporated and has its principal

executive offices in Canada. Namaste's common stock trade on the OTC under the ticker symbol "NXTTF."

8.  Defendant Sean Dollinger ("Dollinger") has served as the Company's Chief Executive Officer ("CEO") during the Class Period.

9.  Defendant Philip van den Berg ("van den Berg") served as the Company's Chief Financial Officer ("CFO") from around October 2016 until June 2018.

10. Defendant Kenneth Ngo ("Ngo") has served as the Company's CFO since June 2018. Ngo served as the Company's corporate controller from April 2018 until June 2018.

11. Defendants Dollinger, van den Berg, and Ngo are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

    (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    (g) approved or ratified these statements in violation of the federal securities laws.

13.     Namaste is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Namaste under *respondeat superior* and agency principles.

15.     Defendants Namaste and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

16.     On November 28, 2017, after market hours, Namaste issued a press release entitled, "Namaste Divests US Assets to Focus on Legal Cannabis Markets and Announces Conference Call," announcing that it had signed a stock purchase agreement to sell its wholly owned US subsidiary, Dollinger Enterprises US Inc. The press release stated, in relevant part:

> Vancouver, British Columbia, Canada - Namaste Technologies Inc. ("Namaste" or the "Company") (CSE:N) (OTC:NXTTF) (FRANKFURT:M5BQ) is pleased to announce that it has signed a stock purchase agreement (the "Agreement") with ESC Hughes Holdings Limited ("ESC") to sell the Company's wholly owned US subsidiary, Dollinger Enterprises US Inc. ("Dollinger US"). The Agreement includes the sale of the domain names Everyonedoesit.com and NamasteVapes.com which combined represent less than 7% of Namaste's current gross revenue, both of which are currently operating at a net loss. Due to the political uncertainty surrounding the legalization of cannabis in the US, Namaste's management has deemed it appropriate to shift its focus to legal cannabis markets and management believes that the Company will be better aligned with its long-term interests by divesting its US operations. Management also feels it is prudent to divest these assets in preparation for the legalization of both medical and

Class Action Complaint for Violation of the Federal Securities Laws

recreational marijuana in Canada. This decision better aligns Namaste with many of its Canadian counterparts and will enable the Company to capitalize on more accretive opportunities moving forward.

Under the terms of the Agreement, Namaste will, through its wholly owned subsidiary, Namaste Technologies Holdings Inc., in consideration of a cash purchase price of US $400,000, convey to ESC the following:

- All authorized and issued shares of Dollinger US
- NamasteVapes.com and Everyonedoesit.com domains
- All banking, merchant, and services accounts
- Five employees of Dollinger US
- One real estate lease held under Dollinger US

Payment of US $100,000 will be received on closing, with the balance of the purchase price being paid at a monthly rate of US $25,000 until paid in full, with payments commencing on January 1, 2018. Closing is expected to occur on or about December 4, 2017.

Although many US states have established some form of medical and/or recreational cannabis legalization, the US federal government remains firm on its position regarding cannabis prohibition. Namaste feels this uncertainty may pose challenges in both the short and medium term and restrict growth opportunities in more progressive markets. Under the terms of this Agreement, Namaste will retain all of its existing database of over 520,000 US consumers, and intends on leveraging that data once US federal legalization is in place.

\* \* \*

**Conference Call**

Namaste will be holding a conference call at 8:30 a.m. on Wednesday, November 29, 2017 to discuss and answer questions regarding the above news. The call will be led by Namaste's CEO, Sean Dollinger.

\* \* \*

Class Action Complaint for Violation of the Federal Securities Laws

**Management Commentary**

Sean Dollinger, President and CEO of Namaste comments: "In light of recent trends, Namaste is extremely excited at the potential for additional growth opportunities in more progressive markets. As a result of this divestiture, Namaste believes it has set the stage to fully exploit any and all opportunities that present themselves within legalized marijuana markets globally. Our decision to divest these US assets is strategic in nature and sets the stage for greater expansion of our e-commerce platform. Namaste believes its future success will be achieved through organic growth, in addition to forming strategic alliances. We also believe this divestiture will lead the Company to profitability in a much shorter time-frame."

17.     The following day, November 29, 2017, Namaste held a conference call to discuss and answer questions regarding the sale of Dollinger Enterprises US Inc. During the call, Hollinger stated the transaction was at arms-length:

[Question:] *and the buyers [of Dollinger Enterprises US] are arm's length, are they*?

[Dollinger]: *Absolutely! It's a group out of Europe who's been interested and we don't feel they're a threat if do need to re-enter into the U.S. So we needed to make sure, there were a lot of people who were interested, due to the names of the websites, etc., so we did have to make a strategic decision on who we sold to."*

(Emphasis added.)

18.     On February 20, 2018, Namaste filed a short form prospectus with the Canadian Securities Exchange. The prospectus was signed by Defendants Dollinger and van den Berg. The prospectus described the sale of Namaste's U.S. subsidiary, stating in relevant part:

On December 31, 2017, the Company completed the sale of Dollinger Enterprises US Inc., a wholly-owned US subsidiary, to ESC Hughes Holdings Limited, for cash consideration of USD$400,000. USD$100,000 was received on closing, with the balance of the purchase price to be paid in monthly instalments of USD$25,000. The

Class Action Complaint for Violation of the Federal Securities Laws

sale represented the divestiture of the domains, everyonedoesit.com and namastevapes.com, which accounted for less than 7% of the Company's gross revenues and operated at a loss.

19. The statements contained in ¶¶16-18 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Namaste failed to disclose that it had sold its wholly-owned U.S. subsidiary to Namaste executives; (2) consequently, Namaste did not sell its U.S. subsidiary in an arm's length transaction; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

20. On October 4, 2018, *Citron Research* published an article entitled, "Namaste: Citron has exposed complete FRAUD that underpins the 'Business' of Namaste," stating that the Company had entered into an "undisclosed related party" transaction. The article stated, in relevant part:

> To keep this simple and to the point, lets go right into indefensible FRAUD #1
>
> Fake claim of a Nasdaq Listing to get investors to buy the stock.
>
> Mr. Dollinger has promised investors a Nasdaq listing and the simple takeaway that comes with it, a higher share price on the back of an up-listing.
>
> In our previous report, we explained that the NASDAQ would laugh Dollinger out of the room given his seedy background and the company's opaque finances. So what did Mr. Dollinger turn around and do… nothing crazy, just committed an act of securities fraud. A video is worth 2k words.

https://www.youtube.com/watch?v=MvFEkvgyHAE

For those who don't want to watch the video, here is a highlight from the transcript.

> "Let's look at our accomplishment of being accepted to one of the largest stock exchanges in the world, and not only entering on the lowest tier, we've been accepted on the second tier due to our requirements. Don't think that the Nasdaq just takes an application and takes a payment and their happy at the end of the day. They went through our books, they went absolutely everything for 6 weeks, we've been working around the clock from the time that I went on your show and called out on our shareholders and investors for support and let's get to that $3.50 mark." Sean Dollinger from Namaste 420 Weekly Update July 25, 2018 **

\* \* \*

*Fraud #2: Undisclosed Related Party Sale with Proof*

With the hope of obtaining the NASDAQ listing on Nov 28, 2017, Namaste announced that it divested of its US assets, Dollinger Enterprises US Inc.

"with our LP sales license knocking on our doorstep, Namaste management has decided that it would be best for our shareholders to divest the company of our US assets...With the US's federal government stance on marijuana and the current federal legislation in the US, Namaste management believes this is a strategic decision which will allow the company to explore new opportunities." --- Sean Dollinger, Nov 28, 2017 Call

Citron asks, "Who in the world would want to buy a money hemorrhaging online vape business from Namaste?"

In a direct response to that simple question, Sean Dollinger replied:

"[Question:] *and the buyers are arm's length, are they? [Sean]: absolutely! It's a group out of Europe*" Sean Dollinger, Nov 28, 2017 Call

Namaste allegedly sold these assets for US$400k to ESC Hughes Holding Limited. The terms were $100k down and $25k a month (which we do have any record of being paid).

*A simple corporate search will illustrate that the purchaser is out of Ireland is not a third party, but rather none other than Namaste executive David Hughes.*



Here is the signed version of the same document.

http://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2018%5C0419%5C11995491.Tif&documentNumber=P16000017747

Namaste Executive (David Hughes) Bought Dollinger Enterprises. And just in case, you believe his name is a coincidence, you will see that the other signatory on the document is none other than is Paul Burns, the HR Manager at Namaste (LinkedIN).

Class Action Complaint for Violation of the Federal Securities Laws



Just to be clear, ***Dollinger said he sold this asset to an arm's length party . . . but it was really sold to David Hughes who has been with Namaste since Feb 2015 (and Paul Burn who has been with Namaste since 2016)*** – can investors trust anything Dollinger says going forward*?*

Namaste has lied to its shareholders, Canadian Regulators, US Regulators; and most of all has attempted to hide US assets from the Justice Department in an attempt to obtain a US listing.

*Citron's theory makes this a criminal offense.*

Could it be possible that Namaste gave away revenues of owning Dollinger but not the costs? In other words, could they be stealing money from the company?

In explaining the stated transaction from a financial viewpoint, Dollinger stated: "By selling our US arm, not only will we be selling it at fair market value, which will give our company positive cash flow for the next twelve months, but the removal of the division will allow us to become profitable by the summer of 2018." Sean Dollinger, Nov 28, 2017

Yet, despite claims that Namaste removed the majority of its losses, Namaste somehow managed to pile up larger losses than the prior year.

Class Action Complaint for Violation of the Federal Securities Laws

| 9 Month Ended Results | |
|---|---|
| Net Loss (May 31, 2017) | ($6,909,390) |
| Remove the Majority of Losses (Assume 50.1%) | ($3,461,604) |
| **Implied Net Loss (May 31, 2018)** | **($3,447,786)** |
| | |
| Actual Net Loss (May 31, 2018) | ($14,543,419) |
| **Incremental Loss** | **($11,095,633)** |

With $2.6 million in inexplicable consulting fees, Citron believes that Namaste is paying out large sums of cash to what might be undisclosed related parties.

\* \* \*

(Emphasis added.)

21. On this news, shares of Namaste fell $0.19 per share or nearly 10.5% over the next two trading days to close at $1.62 per share on October 5, 2018, damaging investors.

22. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

23. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Namaste securities publicly traded on OTC during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Namaste, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

24. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Namaste securities were actively

traded on OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

25. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

26. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

27. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Namaste;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused Namaste to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Namaste securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

28. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

29. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Namaste shares met the requirements for listing, and were listed and actively traded on the OTC, an efficient market;

- As a public issuer, Namaste filed periodic public reports;

- Namaste regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Namaste's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Namaste was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

30. Based on the foregoing, the market for Namaste securities promptly digested current information regarding Namaste from all publicly available sources

and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

31. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

32. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

33. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

34. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:
- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Namaste securities during the Class Period.

36. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Namaste were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Namaste, their control over, and/or receipt and/or modification of Namaste's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Namaste, participated in the fraudulent scheme alleged herein.

37. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Namaste personnel to members of the investing public, including Plaintiff and the Class.

38. As a result of the foregoing, the market price of Namaste securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Namaste securities during the Class Period in purchasing Namaste securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

39. Had Plaintiff and the other members of the Class been aware that the market price of Namaste securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Namaste securities at the artificially inflated prices that they did, or at all.

40. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

41. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Namaste securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43. During the Class Period, the Individual Defendants participated in the operation and management of Namaste, and conducted and participated, directly and indirectly, in the conduct of Namaste's business affairs. Because of their senior positions, they knew the adverse non-public information about Namaste's misstatement of revenue and profit and false financial statements.

44. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Namaste's financial condition and results of operations, and to correct promptly any public statements issued by Namaste which had become materially false or misleading.

45. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Namaste disseminated in the

marketplace during the Class Period concerning Namaste's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Namaste to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Namaste within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Namaste securities.

46. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Namaste.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 6, 2018                    Respectfully submitted,

                                                           **THE ROSEN LAW FIRM, P.A.**

                                                           By: /s/Laurence Rosen
                                                           Laurence M. Rosen, Esq. (SBN 219683)

Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws